## ANDREW J. ROBERTSON ET AL.

### v.

### ISAAC ARTZ.

*Husband and Wife—Wife's Necessaries—Legal Services to Defend Wife against a Criminal Charge.*

Legal services and advances in defense of a wife upon a criminal charge are necessaries which her husband is bound to provide; and in the case of his failure so to do they may be provided by third parties and the value of such services and advances be recovered from the husband by the attorneys furnishing them in an action of assumpsit.

[Opinion filed December 8, 1890.]

IN ERROR to the Circuit Court of Mercer County; the Hon. JOHN J. GLENN, Judge, presiding.

Messrs. BASSETT & BASSETT, for plaintiffs in error.

By the common law, the husband was bound to furnish his wife with necessaries so long as she lived with him, or when living separate from him without her fault.

In Illinois the husband is still liable, notwithstanding the various statutes enlarging the rights and liabilities of married women. Martin v. Robson, 65 Ill. 133; Douglass v. Gausman, 68 Ill. 170.

But the contention is that the husband is not liable for attorney's fees in any case for defending or protecting the wife unless the husband expressly promises to pay, or unless the wife is defending or prosecuting a suit between her and the husband, or one instigated by him.    In every case where the wife is supplied with necessaries by a person the law implies a promise from the husband to pay for them, when the husband has neglected to furnish the means.    It is a part of the marriage contract.    The husband promises in that to protect and support the wife, and if, without any fault on her part, he neglects or refuses to furnish her necessary protection or support, and she is unable to procure them out of her own means, he is liable to whoever supplies the wife.

What are "necessaries" has often been adjudicated in certain cases before the courts; and, again, what are not necessaries has often been passed upon by the courts.    But these decisions were made in reference to the cases before the courts, and the real question for the court to pass upon in the given case was whether that which was furnished in the specific case was a "necessary."

The following are a few of the cases that have decided what are "necessaries" that the husband is liable for.

Necessaries may consist of food.    Walker v. Simpson, 7 Watts & S. Pa. 83.

Of clothing suitable to the condition or social position in life of the husband.    Fueston v. Butcher, 9 Car. & P. 643.

Of lodging.    Rotch v. Miles, 2 Conn. 638.

Of furniture.    Heney v. Sargent, 54 Cal. 396.

Of medicine and medical services.    Harrison v. Grady, 14 Week. R. (Eng.) 139; Cothran v. Lee, 24 Alabama, 380; Bevier v. Galloway, 71 Ill. 507; State v. Housekeeper, Md., 16 Atlantic R. 383; Carstens v. Henschman, 61 Michigan, 426.

Of legal services and disbursements.    Wilson v. Ford, 37 Law Journal Exchequer, 60; Shepherd v. Mackoul, 3 Camp. 326; Turner v. Rookes, 10 Adolphus & Ellis, 47, also reported in 37 E. C. L. R. 35; Brown v. Ackroyd, 34 English L. & E. R. 214; Ottawa v. Hamilton, 3 E. L. R. (N. S.) C. P. D. 393;

Rice v. Shepherd, 104 E. C. L. R. 332; Stocker v. Patrick, Law T. R. (N. S.) Vol. 29, 507; and the following American cases also: Conant v. Burnham, 133 Mass. 503; Morris v. Palmer, 39 N. H. 123; Warner v. Heiden, 28 Wis. 517; Sprayberry v. Merk, 30 Georgia, 80; Porter v. Briggs, 38 Iowa, 166; Paxton v. Johnson, 65 Iowa, 285; Gossett v. Patten, 23 Kansas, 341; Handy v. Stockbridge, 62 Maryland reported in Central Law Journal, Vol. 19, 253; Ray v. Adden, 50 N. H. 82; Clyde v. Pavey (Iowa), 36 N. W. R. 883.

Of the cases cited above for legal services, Shepherd v. Mackoul, Turner v. Rookes, Morris v. Palmer, are where the wife exhibited articles of peace against her husband.   In Warner v. Heiden, and Conant v. Burnham, the husband exhibited articles of peace against the wife and she defended by counsel.   In Rice v. Shepherd, Brown v. Ackroyd, Ottawa v. Hamilton, Stocker v. Patrick, Sprayberry v. Merk, Handy v. Stockbridge, the wife proceeded against the husband for divorce.   In Gossett v. Patten, Porter v. Briggs, Ray v. Adden, the wife successfully defended suits by the husband for divorce.

The English authorities uniformly hold that the husband was liable for legal services and costs expended by counsel in prosecuting a divorce against the husband, where he was proved to be in fault or where there was a reasonable ground to believe he was in fault.

The American courts are not uniform on that question. In Maryland and Georgia the English rule is followed, see the cases cited, *supra;* while the reverse is held in Connecticut, Shelton v. Pendleton, 13 Conn. 417; in Iowa, Johnson v. Williams, 3 Greene 97; in Alabama, Parsons v. Darrington, 32 Ala. 227; in Illinois, Dow v. Eyster, 79 Ill. 254; in Kentucky, Williams v. Monroe, 18 B. Monroe, 514; in New Hampshire, Morrison v. Holt, 42 N. H. 478; in Ohio, Dorsy v. Goodnow, Wright 120; in Vermont, Wing v. Hurlbut, 15 Vermont, 607.

In Kansas and Iowa it is held that the husband is liable for attorney's fees in defending for the wife against the husband's suit for divorce.   See Gossett v. Patten and Porter v. Briggs, *supra.*

In Preston v. Johnson, 65 Iowa, 285, the court held that the
attorney employed by the wife to commence suit against the
husband could recover of the husband, thus reversing John-
son v. Williams, 3 Greene, 97; and the case of Preston v.
Johnson is referred to and approved in Clyde v. Pavey, 36 N.
W. R. 883, and in the latter case the court held that the hus-
band was liable for the fees of the attorney employed by the
wife; and in this case the petition was filed by the husband charg-
ing adultery and cruelty, and a cross-petition by the wife for
divorce on a charge of cruelty, and both petitions and cross-
petition dismissed for want of sufficient proof.

In a still later case in Iowa, Sherwin v. Maben, 43 N. W.
R. 293, the court refers to and reviews all of the four cases
cited in the Iowa reports, and held that the wife's counsel
employed in instituting a suit for divorce against the husband
could not recover of the husband. But it was on the ground
that the allegations of the petition were not true, and under
the circumstances of the case it did not appear that the serv-
ices of the attorney were necessary for the wife's protection.

We have been more elaborate, perhaps, in citing authori-
ties than is necessary, as many of them have only an incidental
bearing upon the question at issue. But we preferred to cite
and class the cases, as we shall find it necessary to refer to
quite a number of them and show what the courts have held
as a rule in all the cases.

We think there is no actual conflict in the authorities as to
the general rule on the subject of what are necessaries. The
difference is in applying the rule to the facts, and in the prac-
tice or statutes in the different States.

We think we can confidently say that there is not a
decision of any court, nor any text writer, that is in conflict
with the claim in plaintiff's declaration. On the contrary,
all, or nearly all, of the decisions sustain the position, and it
is within the universal recognized rule governing the wife's
right to support and protection from her husband.

Bishop in his work on Marriage and Divorce, Sec. 554, Vol.
1, says: "Every wife, whatever the husband's circumstances,
is entitled to food and clothing to preserve her life and

health, and to medical care and nursing when sick. And in general terms, necessaries are such articles of food, or apparel, or medicine, or such medical attendance or nursing, or such provided means of locomotion, or provided habitation and furniture, or such provision for her protection in society, and the like, as the husband, considering his ability and standing, ought to furnish his wife for her sustenance, the preservation of her health and her comfort."

Parsons in his work on Contracts, Vol. 1, page 350, says: "If we suppose a case where a wife, perfectly incapacitated by infirmity of body or mind from making any contract at all, is supplied with necessaries by one who finds her *driven from home and ready to perish*, and who now comes to her husband for indemnity, we can not doubt but that he would recover."

In Shepherd v. Mackoul, *supra*, Lord Ellenborough said: "If she (the wife) was turned out of doors in the manner stated, she carried along with her credit for whatever her preservation and safety required. She had a right to appeal to the law for protection, and she must have the means of appealing effectually. She might therefore charge her husband with the necessary expense of this proceeding, as much as for necessary food and clothing." This decision is referred to approvingly in the cases of Shelton v. Pendleton, and Morris v. Palmer, *supra.*

In Ottawa v. Hamilton, *supra*, Lord Thesiger said: "A suit for a separation was a 'necessary,' because a wife stands in need of protection from the cruelty of her husband, and a suit for dissolution is equally a 'necessary,' when to cruelty is superadded adultery." It is to be recollected that the word "necessary" in its legal sense as applied to a wife merely means something which it is reasonable that she should enjoy.

In Brown v. Ackroyd, *supra*, Lord Campbell said: "A wife has authority to pledge her husband's credit for the costs of a divorce suit where there are reasonable, as well as where there are absolute grounds for instituting the suit. Under such circumstances the suit would be necessary for

the wife's protection, and she would be authorized to employ
a protector, and her husband would be liable for his fees."
This is just as much a 'necessary,' as the cost of exhibiting
articles of the peace are a 'necessary' as stated by Lord
Ellenborough in Shepherd v. Mackoul."

In Rice v. Shepherd, *supra*, Justice Willis said: "It is
admitted that the proceedings in the divorce court were nec-
essary for the protection of the wife, and therefore Brown v.
Ackroyd shows that the action is maintainable."

In Shelton v. Pendleton, 18 Conn., the court decided
against the plaintiff in a suit by attorneys against the husband
for legal services for the wife in a suit against the husband
for divorce. The decision was on the ground that it was
never necessary for the safety of the wife, as such, to obtain
a divorce.

The court of Massachusetts in a well considered case,
Rogers v. Bennett, 114 Mass. 429, it seems to us, expresses
the rule tersely and comprehensibly, to-wit: "As a general
rule the term 'necessaries' applied to a wife is not confined
to articles of food or clothing required to sustain life or pre-
serve decency; but includes such articles of utility as are
suitable to maintain her according to the estate and degree of
her husband." And in a later case, Conant v. Burnham, 133
Mass. 505, the court laid down a more specific, yet a general,
rule and said, "in a general way it may be said that whatever
actually and reasonably tends to relieve distress, or materially
and in some essential particular to promote comfort, either of
body or mind, may be deemed a necessary, for which a wife
under proper circumstances, may pledge her husband's credit."
After citing the opinion of Lord Thesiger, *supra*, and what
was said in Rogers v. Bennett, *supra*, the court proceeds and
says: "Each case must be determined by its own circumstance.
Approximation may sometimes be made by holding that cer-
tain articles or services are to be deemed outside of any
reasonable construction of the term. But legal services do
not fall within such universal or general exclusion. There
may be occasions when such services are absolutely essential
for the relief of a wife's physical or mental distress. Suing

Robertson v. Artz.

out a writ of habeas corpus to deliver herself from unjust or illegal imprisonment, is an illustration of the rule."

In New Hampshire where the courts have uniformly decided against the liability of the husband to the attorney who assists the wife in a divorce suit, yet the attorney's claim against the husband for services for the wife in exhibiting articles of peace against the husband were allowed. In the case cited, *supra*, Morris v. Palmer, 39 N. H. 123, the court said, "When a husband compels his wife to leave his home, the law, from the necessity of the case, makes him chargeable for those things which are necessary for her support. He is bound to provide her with necessaries when she is not in fault." * * * "It is as important that her person be protected from brutal outrage and violence, as that her necessary food and clothing should be supplied. Both are for her preservation, and her husband should be as much bound to fulfill her contracts in the one case as in the other. The case of violence, however, would seem to one of greater necessity." * * * "A married woman can make no contract, binding upon her husband, without his assent, except for necessaries; and unless her employment of some person to draw a complaint shall be held to fall within the legal import of that term she may be remediless against any outrage by him. The proceeding is for her protection, and as she may have no property of her own, she can have no redress unless she if able to pledge her husband's credit." We cite still further from the opinion: "The husband may commit such outrages upon his wife's person, or by his threats and violent conduct place her in such personal peril, that assistance shall become her most pressing necessity, and it would be extraordinary if the same just principle which allows her in such a case to supply her wants at the cost of the husband, should stop short of allowing her legal aid."

In the Wisconsin case of Warner v. Heiden, cited, 28 Wis. 517, the court, after saying that the defendant had withdrawn from his wife that protection which it was his duty to give her, and had put her in custody without cause, uses this significant language: "It is idle to say, that under the circum-

stances of this case, legal advice and assistance was not neces-
sary for her protection and safety. And the same being
necessary, and having been rendered by the plaintiffs, all the
courts hold the principle, and we now add another to the list
that he must pay therefor."

In Morrison v. Holt, 42 N. H. 478, the court recognizes
the general rule that legal services were necessary for the
protection of the wife. And the decision in favor of the hus-
band in that case was that proceedings for a divorce for the
wife was not necessary for her protection, and that the practice
in New Hampshire was to make provisional allowance in the
divorce proceedings for attorney's fees.

In our own State we have cited Dow v. Eyster, 79 Ill. 254,
as being a case where our court decided that the husband was
not liable in a suit at law, by the attorney for the wife in pro-
curing a divorce from the husband for her. In that case the
attorney had received fees from an allowance made by the
court in the proceedings for divorce, and on that ground
the court decided that the question had been adjudicated, but
also followed the rule in Shelton v. Pendleton, *supra,* and said
the husband was not liable in an action at law for the at-
torney's services for the wife in a divorce proceeding, and
place this decision on the ground that solicitor's fees rendered
in the prosecution or defense of an action for divorce was
not within any well recognized list of articles known as neces-
saries.

Messrs. PEPPER & SCOTT, for defendant in error.

The broad, universal legal principle involved in this case is
that "no man shall be made a debtor without his consent."
The innovations upon an exception to this rule are few and
carefully, very carefully, limited and guarded, and ought to
be. Under the common law as administered in this State
there were but two exceptions to this rule in this State, viz.:
necessary support for wife and minor children and solicitor's
fee in divorce cases. The only other exception known to our law
is in suits for separate maintenance. This is made or created
by statute, and manifestly our law makers did not recognize

Robertson v. Artz.

any general legal obligation on the part of the husband to
pay his wife's solicitor's fees or they would not have been so
careful to provide for them by statute.   Again the universal
common law authority to compel the husband to pay solic-
itor's fees could only be exercised while the court had charge
of the case and while the litigation was going on and unde-
termined.   Solicitor could not collect fees even in such cases
after the suit was determined, either at common law or under
the statute, nor could the wife obtain such order if she has
means of her own to pay them.   The rule laid down by
Bishop in his work on Marriage and Divorce, Vol. II, page
418, is, that if a wife omits to make any application to the
court until after the suit is ended, or if she makes application
before, but receives less money than she needs, and if she
has failed in the suit, she is then too late to make any
further demand; clearly showing this was an equitable power
exercised by the court, not a legal liability on the part of the
husband.   The foundation of the rule of the Ecclesiastical
Court, says the author, was " that the wife should be enabled
to bring her case to a hearing and defend herself and so, up
to any time previous to the hearing, the husband was
liable to have the wife's costs taxed against him, but if the
wife brought her case to a hearing, however, and fails, the
husband has never then been made liable for her costs."
And in the case of McCullough et al. v. Murphy, 45 Ill.
256, the Supreme Court of this State has indorsed this doc-
trine, and says emphatically if counsel fails to get an allow-
ance for fees while the case is pending, their right is gone,
and gone forever; clearly and conclusively deciding that there
is no legal liability on the part of the husband to pay even
for such services, " that then it simply is a power in the
court to allow a sum to the wife with which to pay solicitor's
fees, lest she be barred of justice and a fair defense of rights
in relation to her husband and his conduct."   So we say that
even in this innovation the courts have not recognized any
legal right, power, or authority on the part of the wife to
employ counsel and pledge her husband's credit therefor, or
to create any legal liability on the part of the husband to pay

her solicitor's fees. The court simply orders, on her appli-
cation, that her husband shall pay into court, or pay to her,
such funds as shall enable her to employ counsel and prepare
her case for hearing, and if she gets a trial and the hearing
is over and the suit disposed of before such allowance is made,
even this right is gone. In fine the innovation is not for the
benefit of solicitor, nor does it vest them with any legal right
to sue the husband.

And in the case of Dow v. Eyster, 79 Ill. 254, the only
case in this State where such liability was ever attempted to
be enforced by suit at law against the husband, the court
curtly and unceremoniously decided no such right existed, or
ever had been or ever could be recognized by the law. The
doctrine then is the husband is not legally liable to solicitor
for fees in any event, but the court can compel him to fur-
nish them to the wife under certain circumstances to carry
on a suit provoked by the husband, and if the suit is over
even this right can not be enforced, notwithstanding the case
has not gone off the docket. Manifestly if there was a legal
liability under any circumstance no such interlocutory order
would be necessary and the right would not so easily be lost.

In the next place the doctrine of necessaries never obtains
where the husband furnishes a comfortable house and every-
thing necessary and proper for the comfort and convience of
his wife. The doctrine of the liability of the husband in
that respect can only be invoked where he refuses to furnish
house and support or turns his wife out from home or neg-
lects to support or maintain her. The wife must be away
from her husband's house, and away without her fault, before
he can be made liable.

So much then for the common law rule, and the rights of
solicitors under it. Doubtless it may be said in this case as
was said by the court in Judge McCullough's case, in 45th
Ill.: "There is a good deal of argument and a good deal of
force in what is said, or can be said, in support of plaintiff's
proposition, but it is sentiment, not law; argument, not legal
reasoning."

Again the court will observe that this common law doc-

trine of the husband's liability, whatever it was or might be, had its origin and foundation in the doctrine that the wife on marriage lost her legal identity; that her property passed into the hands and control of her husband ; that she could neither sue nor be sued alone; that her husband was liable for her torts as well as her debts contracted before marriage, and that he must alone or jointly with his wife, sue for wrongs done to her reputation, person or property.

Now all this is changed; the married woman in this commonwealth stands before the law almost on an equal footing with the married man ; the difference is reduced to the minimum and in some cases gives the advantage to the wife.

Chapter 68 of our Statute provides: "That the wife may sue or be sued alone." "If she is sued with her husband she may make her own defense." "That the husband shall not be liable for his wife's torts." "That they shall not be liab'e for each others' debts." "That she may make her own contracts, except as to partnerships." "That she controls her own earnings." "That she own and conveys as if sole," and finally, "The husband and wife may sue each other."

These changes are radical, but the courts have gone further, as your Honors will observe, in the case of Martin et al. v. Robson, 65 Ill. 129, where this subject was thoroughly discussed. The courts held that the wife alone can sue for injury to her person, her property, her character and reputation. If she is slandered her husband has no standing in court, and can not be heard in her vindication. If she is maliciously prosecuted or falsely imprisoned she alone can sue for damages, and he can do nothing in her behalf. If she is assaulted he has no action for the injuries she sustains, except for loss of labor. If she is crippled in a railroad wreck she alone can sustain a suit for damages with the same exception for loss of service.

These last propositions have been thoroughly discussed and finally determined in The C., B. & Q. R. R. v. Dunn, 52 Ill. 260; Hayner et al. v. Smith et ux., 63 Ill. 430; Martin et al. v. Robson, 65 Ill. 129; Hennies et al. v. Vogel et ux., 66 Ill. 401; C., B. & Q. Ry v. Dixon et al., 67 Ill. 122;

C. & N. W. Ry. v. Button et ux., 68 Ill. 409; Stampoffski v. Hooper et al., 75 Ill. 242; Hawver v. Hawver, 78 Ill. 412; Bassett v. Bassett, 20 Ill. App. 543.

The statute and these cases show how vastly and radically different are the relative duties and obligations of husband and wife in their business and financial relations at the present time and under present conditions from what they were under the common law, and these changes would be worthy of grave and careful consideration, even if it were true that under the common law the defendant would have been legally responsible as charged.

Under the old law a married woman could make no contract binding on herself. Under our statute she can contract as well and on an equal footing with her husband, who made the contract for the services for which indemnity is sought.

C. B. SMITH, P. J. This was a writ of error to the Circuit Court of Mercer County. Plaintiffs in error brought suit in assumpsit against the defendant in error and filed their declaration alleging that on the first day of July, 1889, Josephine Artz, the wife of the defendant, while living with her husband, was arrested on a charge of murder and placed in the jail of Mercer County, and that afterward in the month of August, 1889, she was removed to Elmira, Chemung county, in the State of New York, where the crime was alleged to have been committed. That the plaintiffs were employed by the said wife of the defendant to advise, counsel and assist her in regaining her liberty, and in defending her against the charge of murder, and that plaintiffs, at her request, rendered legal services for her, and furnished aid, and expended in disbursements in such case to the value of one thousand dollars. Avers that Josephine Artz was innocent of the charge and that the services of the plaintiffs and disbursements made by them were reasonably necessary for the protection of the life, liberty, comfort and health of Josephine Artz. That she had no money, property or means of her own, to pay for legal services, and for expenses in defending herself against said charge, and that the defendant, her husband, was abundantly able to procure the services of attorneys and

defray the expenses of her defense, but refused to do so, or to furnish her money or means to pay for the same.

Plaintiffs aver further that they charged and relied upon the defendant to pay them for their services and disbursements in such a defense, which plaintiffs aver were reasonably worth $1,000. By means whereof defendant became liable to pay said sum of money, etc., and has failed and refused to damage of plaintiffs in $1,000. The defendant filed a general demurrer to said declaration, and issue joined to the same. The court sustained the demurrer. Plaintiffs elected to stand by it, and thereupon the court rendered judgment against the plaintiffs for costs. The action of the court in sustaining the demurrer and rendering judgment against the plaintiff for costs, is assigned for error.

The only question before us, is whether the declaration stated a legal and valid cause of action against the defendant. If the legal services and advances made to the wife under the circumstances stated in the declaration were necessary within the meaning of the law, then the declaration is good; if on the contrary they were not necessary then the declaration is bad. Upon the answer to this question in the affirmative we can entertain no doubt. Bishop in his work of Marriage and Divorce, Sec. 554, Vol. 1, says, "Every wife, whatever the husband's circumstances, is entitled to food and clothing to preserve her life and health, and to medical care and nursing when sick. And in general terms, necessaries are such articles of food, or apparel, or medicine or such medical attendance or nursing or such provided means of locomotion or provided habitation and furniture or such provision for her protection in society and the like as the husband considering his ability and standing, ought to furnish his wife for her sustenance, and the preservation of her health and her comfort."

Parsons in his work on Contracts, Vol. 1, page 350, says: "If we suppose a case where a wife perfectly incapacitated by infirmity of body and mind, from making any contract at all, is supplied with necessaries by one who finds her *driven from home and ready to perish* and who now comes to her husband for indemnity, we can not doubt but that he would recover."

In Shepard v. Machoul, 3 Campbell, 326, Ellenborough said : " If she (the wife) was turned out of doors in the manner stated, she carried along with her credit for whatever her preservation and safety required.    She had a right to appeal to the law for protection, and she must have the means of appealing effectually.    She might, therefore, charge her husband with the necessary expense of this proceeding, as much as for necessary food and clothing."

In the Wisconsin case of Warner v. Heiden, cited, 28 Wis· 517, the court, after saying that the defendant had withdrawn from his wife that protection which it was his duty to give her, and had put her in custody without cause, uses this significant language: " It is idle to say, that under the circumstances of this case, legal advice and assistance was not necessary for her protection and safety.    And the same being necessary, and having been rendered by the plaintiffs, all of the courts hold the principle, and we now add another to the list, that he must pay therefor."

We think the foregoing cases sufficiently illustrate the general rule as to the liability of the husband for legal services rendered under the circumstances related in the declaration.    In support of and in harmony with the cases from which we have quoted and which held the wife may recover for necessary legal services, we cite the following cases : Wilson v Ford, 37 Law Journal Exchequer, 60; Turner v. Rooks, 10 Adolphus & Ellis, 47, also reported in 37 E. C. L. R. 35; Brown v. Ackroyd, English L. T. E. R. 214; Ottawa v. Hamilton, 3 E. L. R. (N. S.) C. P. D. 393; Rice v. Shepard, 104 E. C. L. R. 332; Stocker v. Patrick, Law T. R (N. S.) Vol. 29, 507; and the following American cases also : Conant v. Burnham, 133 Mass. 503; Morris v. Palmer, 39 N. H. 123; Sprayberry v. Merk, 30 Georgia 80; Porter v. Briggs, 38 Iowa, 166; Paxton v. Johnson, 65 Iowa, 285; Gosset v. Patton, 23 Kansas, 341; Handy v. Stockbridge, 62 Maryland, reported in Central Law Journal, Vol. 9, 253 ; Ray v. Adden, 50 N. H. 82; Clyde v. Pavy (Iowa), 36 N. W. R. 883.

It is insisted by defendant in error, however, that the Supreme Court of this State has adopted a different rule, and

held that legal services and disbursements rendered to a wife are not such necessaries as can be charged to the husband, and we are referred to the cases of McCulloch v. Murphy, 45 Ill. 256, and Dow v. Eyster, 79 Ill. 254, as supporting this view.

We do not think either of these two cases support the contention of defendant in error. In the case of Murphy ats. McCulloch, there had been a suit of divorce, brought by Murphy's wife against him. The court allowed Judge McCulloch, her solicitor, $50 fees, as,a part of the wife's temporary alimony. This sum was paid to the attorney and at a subsequent term another application was made by counsel for a further allowance, but in the meantime plaintiff had gone back to her husband and was living with him. The court denied the claim for further fees under the circumstances.

The case of Dow v. Eyster, was a suit brought by Dow against Eyster, to recover from him for legal services, rendered for the wife of Eyster in a suit brought by her against her husband for divorce. During the pending of the divorce suit the court allowed the wife alimony and also made an order on the defendant to pay Dow, the wife's solicitor, $50, which was paid him. On the trial of that case the wife was awarded a decree of divorce, but the decree provided that no other alimony (except what had been before then paid in money and property) should be allowed. The court had before allowed Dow $50, and the court held that that action was final and conclusive. The court holds that if Dow had not then been satisfied with that amount, he should have asked the court for a further allowance while the whole matter was pending before the court with full power to adjudicate on all questions between the parties, including the power to allow for legal services rendered the wife in that suit. We think the court very properly held that Dow could not again come and begin an original suit in a court of law to recover more attorney's fees and again put the defendant to retry the question settled in the divorce proceedings, and that such a proceeding would be repugnant to every principle of justice. It is also said in that case that an action at law can not be maintained against a husband by a solicitor who may prosecute or defend an action for divorce for the wife.

It will be seen here that the court limits this restriction against the right to bring a suit at law for legal services rendered to the wife, to services rendered in divorce proceedings. Neither of these cases give any color to the claim of defendant in error that legal services rendered the wife may not be necessaries to her which may be charged to the husband, but, on the contrary, they both expressly recognize such to be the law. But both cases very correctly hold that the solicitor should make his demand for the legal services rendered to the wife in the divorce suit, where the court has full power and jurisdiction over the whole matter, and can do full and adequate justice to all parties and their solicitors without the trouble, expense and vexations of suits at law. Under our practice and under our statute the courts have always exercised jurisdiction over the question of solicitors' fees in divorce cases, and adjudicated upon the rights of all parties, and have always allowed or disallowed solicitors' fees for the wife, as justice and equity required. The same course was followed in the two cases relied upon by the defendant in error. But where the fees sued for, as in this case, were not earned in a divorce or other alimony proceeding, but in a criminal proceeding, where the court had no control over fees and no jurisdiction in the matter, then such suit must of necessity be an original proceeding in a court of law and upon the implied assumpsit. Otherwise a legal right to demand payment would be defeated for want of proper form of action.

An examination of most, if not all, of the cases relied on by the defendant will show that they grew out of divorce suits, and that the solicitors' fees were settled in the principal suit. But while this mode of adjustment was adopted, the great preponderance of authorities expressly recognize the necessity of the wife to have the assistance of counsel, and compel the husband, by direct and summary proceedings, to pay for such services.

In addition to the averments in the declaration (which we hold to constitute a good cause of action) counsel for defendant in error inform us, in their printed argument, that "Josephine Artz was taken from the house and protection of

her husband by the strong arm of the law, and removed to New York to answer to the charge of having poisoned her former husband;" and they further declare in the argument that "there was no legal obligation resting on the husband to furnish (to her) the means of defense;" and this "under the broad principle that no man shall be made debtor without his consent." We make these extracts from defendant's argument, not for the purpose of construing the declaration in the light of them, but for the purpose of allowing defendant himself, through his counsel, to state his own position, monstrous, inhuman and barbarous as it is, and without support in reason, justice, law or humanity. What last extremity of necessity to this wife could have been greater or more urgent, short of torture itself, than there was upon her, seized by the officers of the law by her own fireside, at her own house, under her husband's roof, where it was her duty and her right to be, and carried to a foreign State under a charge of murder and thrust in prison, without friends or money, and alone and charged for her life. Then, if ever, was it her right to feel the strong, supporting arms of her husband about her, and then it was his highest duty and honor to keep his vows to protect his wife, and defend her with his presence, his counsel and his money. The declaration avers that he was abundantly able to defend her and employ counsel for her, but would not. It is admitted that medical services may be necessary for the wife to restore her to health or save her life, and why are the services of an attorney not equally necessary to save the wife from the dungeon or the scaffold?

And the king shall answer, and say unto them: "Depart from me, ye cursed, into everlasting punishment * * * for I was a stranger and ye took me not in, * * * sick and in prison, and ye visited me not." This was the fearful malediction hurled by the great Lawgiver in his righteous indignation against those who would not visit even the *stranger* who was sick and in prison. If this be the fate of the stranger toward his fellows in prison and distress, what shall be said of the husband who turns a deaf ear to the appeals of her whom he has sworn to cherish, love and pro-

tect, through good and evil, when her life is at stake? She was not absent from her husband or her house voluntarily, so as to place her in any default in respect of her duty to her husband. The presumption is that she was innocent of the great crime with which she stood charged. The declaration avers she was innocent, and the demurrer admits the fact, and she was entitled to be defended, and it was the bounden duty of her husband, to the extent of his ability, to defend her, and when he failed in that duty then she had the legal right to employ all reasonable and necessary agencies, including that of counsel, for her defense, and charge her husband's estate with such necessary and reasonable expenditures.

Counsel err in contending that the rule of law " that no man shall be made another's debtor without his consent" "is a broad, universal legal principle." It is the duty of the husband to support and maintain his wife and children, to provide them a home, to feed and clothe them, to care for them when sick, to protect them living and to defend them in their persons and character, and in general to do and furnish for them in all respects what is reasonable and appropriate for them to have and enjoy, according to his station in life and his ability to furnish such things. The law never has nor never can sit down in order and give a name to a limited schedule of things which shall be necessary for a wife or child. The list must be left open and enlarged or limited as occasion shall require. When, therefore, the husband being able to furnish these necessary things for his wife or children and neglects or refuses so to do, then he may be made debtor without his consent to any man who will furnish the necessary things to his wife and children.

We are of opinion that this declaration is good and that the court erred in sustaining the demurrer and in rendering judgment against the plaintiff for costs.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*